JOHN BRENNAN, Appellant, *v.* CHARLES C. RICHARDSON, Respondent.

*Negligence — duty of a person, driving upon a highway, to one attempting to pass him — when he is liable even though no collision takes place.*

A person driving a wagon along a public highway, who knows that the driver of a wagon approaching from the rear desires to pass him, is bound to exercise reasonable care to avoid injuring the driver overtaking him.

The gravamen of the complaint in an action to recover damages for personal injuries was, that while the plaintiff, who was driving along a highway, was endeavoring to pass the defendant, who was driving in advance of him, the defendant, either negligently or willfully, drove his horse in such a manner as to force the plaintiff's horse against the side of the street and upset his wagon. The complaint alleged an actual collision between the defendant's horse and wagon and the plaintiff's horse, and that feature of the accident was referred to incidentally upon the trial; but under the pleadings and the evidence the case did not necessarily turn upon the question whether the collision occurred.

*Held,* that the plaintiff was entitled to recover if the accident was caused by the negligence of the defendant in the management of his horse and vehicle, even although the collision alleged in the complaint did not, in fact, occur.

APPEAL by the plaintiff, John Brennan, from a judgment of the City Court of Yonkers in favor of the defendant, entered in the office of the clerk of said court on the 15th day of December, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of December, 1897, denying the plaintiff's motion for a new trial.

*John C. Harrigan,* for the appellant.

*John H. Ferguson,* for the respondent.

WILLARD BARTLETT, J. :

This action arose out of an accident which occurred to the plaintiff while driving along a street in the city of Yonkers upon which the defendant was also driving, in the same direction, a short distance ahead of the plaintiff and his wife. According to the plaintiff's testimony he approached the defendant's vehicle while the defendant was walking his horse, and undertook to pass the defendant on the right. Thereupon he says that the defendant "started his horse up suddenly and got ahead of me, and then turned his horse's head up against my horse's head, and the horse got excited

and ran into the curb-stone and the wagon was turned over and both of us were thrown out on the sidewalk." In another place the plaintiff says: "At the time I attempted to pass Mr. Richardson, there was room for two or three wagons to pass between him and the curb. When I attempted to pass he started his horse up suddenly, drove ahead of me, and then turned around at right angles and drove me on to the sidewalk. After he did that, he drove away and I could see nothing of him until I got up."

The defendant gave a very different account of the accident, and ascribed it solely to a collision between the plaintiff's wagon and the curb at a bend in the road. He swore positively that he never touched the plaintiff, and that he was more than forty feet ahead of him when the plaintiff upset. "I am positive," he said, "that I didn't touch him and he didn't touch me. It would not be possible for him to strike my wagon without overturning it."

In charging the jury, the learned city judge instructed them that if they determined the defendant's story to be true, and that he never struck the body of Mr. Brennan's horse, they must find a verdict in favor of the defendant. To this instruction an exception was duly taken by counsel for the plaintiff, who asked the court to charge the jury that, even if they should believe that Mr. Richardson's horse did not actually touch Mr. Brennan's horse, but still believed that Mr. Richardson's carelessness forced Mr. Brennan over against the curb, and that Mr. Brennan, in attempting to avoid him, went against the curb and upset, they might render a verdict in favor of the plaintiff.

In response to this request the learned judge said: "I decline to charge the evidence; the jury can draw their own conclusions;" and an exception was taken in behalf of the plaintiff to his refusal to charge as requested.

I think this refusal was erroneous and that the plaintiff was entitled to have the jury instructed in accordance with his counsel's request. The gravamen of the plaintiff's complaint against the defendant was that the defendant, when the plaintiff was endeavoring to pass him, either willfully or negligently drove his own horse in such a manner as to force the plaintiff's horse over against the side of the street and upset his wagon. While the complaint does allege an actual collision between the defendant's horse and wagon

and the plaintiff's horse, that feature of the accident was mentioned only incidentally in the plaintiff's testimony and it was not until his cross-examination that he stated distinctly that the head of the defendant's horse touched the head of his horse. Under the pleadings and the evidence the case did not necessarily turn upon the question whether there was actual contact between the horses or vehicles of the respective parties; and if the accident was caused by the negligence of the defendant in the management of his horse and vehicle, although they did not in fact collide with those of the plaintiff, I see no reason why the plaintiff should not have been allowed to recover.

The tone of the charge throughout was much more favorable to the defendant than to the plaintiff. The evidence which tended to establish the defense was emphasized by the learned judge, who even described the effect of some of such testimony upon his own mind. He instructed the jury that Mr. Richardson did not owe any duty to Mr. Brennan; that all he had to do was to keep his own horse right along in the beaten track of the highway; and that if Mr. Brennan wished to pass Mr. Richardson's carriage it was his duty to get by it safely and successfully as any prudent man might under the same circumstances. Although no exception appears to have been taken to the instruction that the defendant did not owe any duty to the plaintiff, it seems clearly to have been erroneous in view of the plaintiff's testimony that the defendant saw him as he approached. When made aware of the desire of the rear driver to pass, the driver who was ahead owed a duty to exercise reasonable care not to injure the driver overtaking him. "The movement of carriages passing on our turnpike roads in *opposite* directions," says GIBSON, Ch. J., in a leading Pennsylvania case, "is regulated by special enactment; but there is no positive law to regulate the passing of those who are travelling in the *same* direction." He shows that the purpose of the enactment as to vehicles meeting one another is to avoid collisions which might otherwise ensue from the misapprehension of each driver as to the course which the other intended to take, and points out that no such uncertainty arises in respect to carriages moving in the same direction. If there be convenient room to pass on any particular part of the road the rear

driver cannot complain. " If there be not, it is doubtless the duty of the other to afford it, on request made, by yielding him an equal share of the road, if that be adequate and practicable ; if not, the object must be deferred till the parties arrive at ground more favorable for its accomplishment." (*Bolton* v. *Colder,* 1 Watts, 360.) Immediately after the jury had been instructed that the defendant owed the plaintiff no duty, they were told further that they " might find from all the evidence that Mr. Brennan might have kept behind Mr. Richardson and not attempted to pass him while driving down hill so fast." By this and other portions of the charge the learned judge intimated to the jury so clearly his idea of what they ought to do as to render it exceedingly probable that his obvious opinion on the issues of fact controlled the verdict. The case, therefore, is not one in which it can be held that erroneous instructions could not have been harmful to the appellant, for here, independently of any exceptions, it is quite plain that justice requires a new trial.

All concurred.

Judgment and order reversed, and new trial granted, costs to abide the event.